FILED
2005 Jun-16  AM 10:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MONICA STEADMAN,               }
                               }
        Plaintiff,             }
                               }        CIVIL ACTION NO.
v.                             }        04-AR-1142-S
                               }
MIKE HALE, et al.,             }
                               }
        Defendants.            }


**MEMORANDUM OPINION**

Before the court are the motions for summary judgment of defendants, Mike Hale ("Hale"), Benjamin Box ("Box"), Drummond Liddell ("Liddell"), and Charlette Ryan ("Ryan").  As will appear from what follows, the court has determined that the joint motion of Hale, Box, and Liddell (hereinafter collectively referred to as "department defendants") is due to be granted.  Ryan's separate motion is due to be granted in part and denied in part.

Plaintiff, Monica Steadman ("Steadman"), brought the above-entitled action invoking 42 U.S.C. § 1983.  The four defendants, employees of the sheriff's department of Jefferson County, Alabama, are being sued in both their individual and official capacities. At all times relevant, Hale was the sheriff of Jefferson County, Ryan was a deputy sheriff, Box was a deputy with the rank of sergeant and Ryan's immediate supervisor, and Liddell was the chief training officer for the department.

The amended complaint contains four counts: excessive force (count one), false imprisonment (count two), both alleged to

constitute violations of § 1983 and the First, Fourth, and Fourteenth Amendments against Hale, Ryan, and Box; assault and battery against Ryan in alleged violation of the law of Alabama (count three); and negligent supervision, training, and hiring in violation of § 1983 and the First, Eighth, and Fourteenth Amendments against Hale, Box, and Liddell (count four).  Only the fourth count charges Liddell with a violation of Steadman's constitutional or common law rights.

*Summary Judgment Facts*[1]

On the night of October 18, 2003, Steadman hosted a Halloween party in her home for her church youth group.  At the conclusion of the party, she and several other attendees decided to drive to the Bayview Bridge near Mulga, Alabama, which was rumored to be haunted, for the purpose of telling ghost stories.  Steadman drove one of several cars transporting the party attendees to the bridge. Ryan was patrolling the area nearby and observed Steadman's car. She testifies that she observed the car weaving.  Steadman maintains that she did not swerve or weave.

After two of the cars in the church group caravan pulled off

---

[1] Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Rule 56(c), F.R.Civ.P.; *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  In assessing whether the movant has met its burden, the court must view the evidence, and all inferences drawn therefrom, in the light most favorable to the non-movant.  *Hairston v. Gainesville Sun Pub. Co.,* 9 F.3d 913, 918 (11th Cir. 1993).  In accordance with this standard, the following statement of facts includes both undisputed facts and the facts according to the plaintiff's evidence, where there is a dispute.

2

the road and stopped near the bridge, Ryan pulled her patrol car in behind them and turned on her flashing police lights.   Ryan was accompanied by another deputy, Joshua Freeman ("Freeman"), who was driving a separate patrol car.   Ryan approached Steadman's vehicle on the driver's side, while Freeman approached the second vehicle. Ryan asked Steadman if she had been drinking.   Steadman, responding in the negative, stated that she had been hosting a youth group party and said that "we wouldn't be slushing it up" at a church function.

Ryan asked Steadman to step out of the vehicle and repeated her query as to whether Steadman had been drinking.   Ryan informed Steadman that she was going to "pat her down for weapons."   There is no evidence that Ryan had any reason to suspect that Steadman was carrying a weapon.   During the pat down procedure, Steadman testifies that Ryan reached up between her legs and roughly touched her genital area.   Steadman flinched.   Ryan responded by shoving Steadman against the side of the car and handcuffing her hands behind her back.   Steadman was arrested  for resisting arrest and disorderly conduct.   The charges were later dropped.

Ryan chipped Steadman's tooth in the process of pinning her to the side of the car and caused her nose and mouth to bleed. Steadman told Ryan that she was injured, to which Ryan responded, "I'm giving you a reality check."   Ryan placed Steadman in the back of her patrol car, where she would remain for nearly two hours.

3

Ryan contacted her supervisor, Box, and requested that he come to the scene.  Once before and once after Box arrived, Steadman was removed from the vehicle, and pictures were taken of her injuries. Neither Ryan nor Freeman sought medical treatment for Steadman at the scene.

Freeman transported Steadman to the Jefferson County jail. Steadman posted bond, and after leaving the jail, she met with Box at the Bessemer Division of the sheriff's department and made a statement regarding Ryan's conduct. The sheriff's department subsequently opened an internal investigation into Ryan's conduct. It was determined that Ryan acted in accordance with proper procedures when she pulled the car over, but that Ryan had no basis for requiring Steadman to exit the vehicle or for patting her down. Upon recommendation, Hale suspended Ryan for five days without pay, ordered her to "remedial training" and assigned her to mandatory stress management.  In substance, Ryan's "remedial training" required her to ride on patrol with a training officer and to review on her own the department's policies and procedures.

Ryan has been employed by the Jefferson County Sheriff's Department for fourteen years.  In these fourteen years, only one excessive force complaint other than Steadman's had been made against her.[2]  Hale was not involved in the decision to hire Ryan.

---

[2] Defendants initially contended that this previous excessive force complaint was unsubstantiated.  Steadman introduced documentary evidence that the department found the complaint to be substantiated and suspended Ryan. Defendants responded that the imposed discipline was rescinded before it took effect because the complainant pled guilty to disorderly conduct and resisting arrest charges.  Viewing the facts in the light most favorable to Steadman, the court will assume for purposes of summary judgment that this previous charge against Ryan had some merit.

He did not become sheriff until 1999.

*Analysis*

Official Capacity Claims and Eleventh Amendment Immunity

Steadman's § 1983 claims insofar as they seek money damages against any defendant in his or her official capacity as an employee of the Jefferson County sheriff's department are due to be dismissed.  As defendants point out, the Eleventh Amendment to the United States Constitution bars suits for money damages against a state, unless the State waives or Congress abrogates its immunity. *See Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524 (11th Cir. 1990).  An Alabama sheriff and his deputies are considered arms of the State when engaged in law enforcement activities.  *See McMillian v. Monroe County, Ala.*, 520 U.S. 781, 793 (1997). Moreover, an official capacity suit is, in all respects other than name, treated as a suit against the government entity itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Carr*, 916 F.2d at 1524 ("[l]awsuits against a state official in his or her official capacity are suits against the state when 'the state is the real, substantial party in interest'")(internal citation omitted). Because Steadman's official capacity § 1983 claims seeking damages are effectively suits against the State of Alabama that are outside the federal judicial power by virtue of the Eleventh Amendment, summary judgment is due to be granted as to said claims.

Steadman's efforts to escape the reach of Eleventh Amendment immunity are inapposite.  First, the factual distinctions Steadman

would make between her claims and the certified question in *Parker v. Amerson*, 519 So.2d 442 (Ala. 1987), do nothing to alter the fact that Hale, Ryan, Box, and Liddell are immune from suit in their official capacities. *Carr*, 916 F.2d at 1527 (holding that "sheriff's eleventh amendment immunity also extends to deputy sheriffs because of their traditional function under Alabama law as the sheriff's alter ego").[3]   Second, the bad faith exception to immunity from suit under the Alabama Constitution applies only to an action seeking injunctive relief.  Like the plaintiff-appellants in *Carr*, Steadman's argument "reflects a misunderstanding of the nature of the exceptions to immunity under the Alabama Constitution.  As held by the Alabama Supreme Court, a sheriff may only be sued to *enjoin* him from acting in bad faith." *Carr*, 916 F.2d at 1525.   To the extent the official capacity claims seek money damages, they are barred by the Eleventh Amendment.

Injunctive Relief

Steadman's official capacity claims seeking injunctive relief are not barred by the Eleventh Amendment.  *See Graham*, 473 U.S. at 169, n. 18; *Carr,* 916 F.2d at 1525, n. 2.   Summary judgment is appropriate nonetheless, because the evidence falls woefully short of presenting a case or controversy calling for prospective

---

[3] The court notes that Sergeant Box and Training Officer Liddell do not have the title "deputy sheriff."   Steadman has not pressed any distinction between Liddell and Box and a deputy sheriff that would deprive Box and Liddell of the extension of Eleventh Amendment immunity that the Eleventh Circuit held was appropriate in *Carr.*  Moreover, this court sees no reason that Box and Liddell should not be entitled to immunity from suit in their official capacities.  *See Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1430 (11th Cir. 1997)(holding that Alabama jailers "are state officials for the purpose of Eleventh Amendment immunity").

injunctive relief.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983); *Rizzo v. Goode*, 423 U.S. 362 (1976); *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).  Moreover, this same standing doctrine bars Steadman's claims for injunctive relief against defendants in their individual capacities.  Summary judgment is due to be granted to all defendants insofar as the complaint seeks injunctive relief.

<u>Qualified Immunity of Department Defendants</u>

As a defense to the claims against them in their individual capacities, department defendants argue that they are entitled to qualified immunity.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The "fundamental inquiry in a qualified immunity case is whether 'a reasonable official would understand that what he is doing violates [a federal constitutional or statutory] right.'" *Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir. 1997) *quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  As the Supreme Court made clear in *Saucier v. Katz*, 533 U.S. 194 (2001), before making this inquiry, the court must determine whether, viewing the evidence in the light most favorable to Steadman, any of the department defendants violated § 1983.  *Id.* at 200-201; *see Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)(the "threshold inquiry" is "whether [the] plaintiff's allegations, if true, establish a constitutional violation").  Applying this qualified immunity framework to the evidence, department defendants are individually entitled to summary judgment for the reason that they

(Hale, Box, and Liddell) engaged in no conduct that violated §
1983, and, even if their conduct violated § 1983, it did not
violate clearly established law of which a reasonable officer in
their position(s) would have been aware.

Any viable § 1983 claim against Hale, Box, or Liddell must be
grounded on supervisory liability.   In other words, Steadman's
claims against department defendants depend upon proof that some
action taken by one or more of department defendants *caused* Ryan's
alleged deprivation of Steadman's federally protected right.   As
she puts it in her brief, Steadman maintains that department
defendants are liable for the "deliberate indifference" they
displayed "in their failure to train and supervise Deputy Ryan in
the proper procedures for pat down searches, excessive force and
disorderly conduct arrest."   Pl. Brief at 24.

As evidence of this indifference, Steadman relies on the
vagueness and/or silence of the departmental policies and
procedures manual on the topics of pat-downs, the use of force, and
disorderly conduct.   In their testimony, department representatives
have uniformly agreed that Ryan did not follow proper procedure
when she performed the pre-arrest pat down of Steadman, pushed
Steadman against the car, and arrested Steadman.   Yet, nothing in
writing existed to make Ryan aware of these policies.   Even after
the incident, the remedial training Ryan underwent only required
her to read a policies manual that gave little guidance on the
subjects of pat down searches, the use of force, and the elements
of disorderly conduct.   Further, Steadman maintains that department

8

defendants could provide no evidence that she had received training in the use of force within the last four years and the only written instruction on the use of force is a conclusory sentence in the department manual that says personnel shall not use unnecessary force.   Even in light of this evidence, Steadman's claims fail against each of the department defendants.

It is settled that supervisory officials are not vicariously liable under § 1983 for the unconstitutional acts of their subordinates.  *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir. 2003); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). The only possible constitutional violations alleged under Steadman's complaint were committed by Ryan, not any department defendant.   Department defendants are liable under § 1983, if at all, only if they personally participated in the alleged violation or if there is a causal connection between their actions and the alleged deprivation of a constitutional right.   *See Cottone*, 326 F.3d at 1360 ("supervisory liability...occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a deprivation").   Though Steadman advances both participation and causal connection theories, the evidence fails to support her claim that Hale, Box, or Liddell are liable under § 1983.

As to the alleged participation of Box in the unlawful arrest and imprisonment, the evidence does not give rise to a genuine issue of material fact.   Though the exact arrival time of Box on the scene at the Bayview Bridge is uncertain, there is no dispute

of the fact that he did not arrive until after Steadman was patted
down and arrested.  Box's failure to undo the arrest that Ryan had
completed based on Steadman's oral assertions that she had done
nothing wrong cannot be said to have made him a participant in
Ryan's allegedly unconstitutional conduct.  Moreover, Box's
participation in the decision not to summon medical care to the
scene for Steadman does not support § 1983 liability.  Steadman has
not pointed to any law or constitutional provision that was
allegedly violated by this decision, notwithstanding the fact issue
she urges as to whether departmental policy required the summoning
of medical assistance to the scene based on Steadman's having
suffered a chipped tooth and a bloody nose and mouth.

Thus restricted, Steadman's § 1983 claims against department
defendants depend upon a causal connection between Ryan's actions
and the training and supervision she received from Hale, Box, and
Liddell.[4]  Her training and supervision claims survive or fail on
evidence (or lack thereof) that one or more of the department
defendants were indifferent to an obvious need for greater or
different training and supervision than that Ryan received.  As the
Eleventh Circuit reasoned in *Cottone*, the "causal connection"
necessary to make out a supervisory liability claim can be

---

[4] Steadman also charges department defendants with negligent hiring in
her complaint, but this theory is wholly unfounded in the evidence.  Ryan was
hired before Hale became sheriff and neither Box nor Liddell have hiring
authority for the department.  Thus, none of the department defendants could
be liable under § 1983 for hiring Ryan, even entertaining the dubious
assumption that the decision to hire her was in conscious disregard of an
obvious risk that she would subsequently use excessive force.  *See Bd. of
County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397 (1997).

established "when a **history of widespread abuse** puts the reasonable supervisor on notice of the need to correct the alleged deprivation, and he fails to do so."  326 F.3d at 1360 (internal citation omitted)(emphasis supplied).  The court in *Cottone* went on to state:

> Alternatively, the causal connection may be established when a supervisor's custom or policy...result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.  The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous.

326 F.3d at 1360 (internal quotation marks and citations omitted).

Much of Steadman's argument that department defendants' training and supervision of Ryan violated § 1983 is based on the conduct of Hale and the department **after** the incident with Steadman.  There are genuine issues of fact related to the remedial training Ryan received, and Steadman makes a good case that better and more detailed remedial training would have been useful.  This belief notwithstanding, evidence that the department did not adequately respond to the incident between Ryan and Steadman does not go to proving that department defendants **caused** the deprivation of Steadman's rights.  The relevant question is whether a jury could fairly conclude that these defendants caused Ryan's conduct toward Steadman, not whether these defendants were indifferent toward the deprivation of Steadman's rights after the fact.  *See Hartley*, 193 F.3d at 1269-70 (supervisor did not violate § 1983 by

11

failing to remedy sexual abuse by his subordinate where plaintiff suffered no injury after supervisor learned of sexual abuse).

This court's role in assessing the merits of a § 1983 supervisory liability claim is not to second guess the department's training program or its response to Steadman's complaints. *See City of Canton v. Harris*, 489 U.S. 378, 392 (1989). Instead, the court's limited role is to ensure that department defendants were not indifferent to a history of widespread abuse and that their training and supervision did not lead deputies like Ryan to conclude that unreasonable searches, arrests, and uses of force were permissible. *See Hartley*, 193 F.3d at 1269 (concluding that supervisory liability could not be imposed based on a custom or policy resulting in deliberate indifference absent evidence that supervisor had policy "which could have left [his subordinate] to believe" that the alleged unconstitutional conduct was permitted by the supervisor).

Aside from describing the egregious nature of Ryan's conduct, Steadman relies on Ryan's continued insistence that she did nothing wrong as evidence that department defendants ignored a history of widespread abuse. Ryan's opinion of her own conduct, during the course of litigation against her, falls far short of the standard for allowing a case to proceed on a theory of supervisory liability. Moreover, under a reasonable formulation of a "history of widespread abuse," one previous complaint against a deputy with fourteen years of service cannot suffice to put department defendants on notice of an obvious need for greater training and

12

supervision in the use of force or the elements of disorderly conduct. *See Hartley*, 193 F.3d at 1269 (the "deprivations that constitute widespread abuse sufficient to notify the supervising official must be **obvious, flagrant, rampant and of continued duration,** rather than isolated occurrences")(emphasis supplied); *Wright v. Sheppard*, 919 F.2d 665, 674 (failure to provide specific training does not lead to 1983 liability absent "evidence of a history of widespread prior abuse by Department personnel that would have put the sheriff on notice of the need for improved training or supervision").

Steadman argues that Ryan had received no training in fourteen years on the use of force other than one conclusory sentence in the Jefferson County policies and procedures manual.  The evidence belies this assertion.  The very training log Steadman refers to reveals that Ryan participated in a variety of training programs, several of which involved search procedures and/or the use of force.  Moreover, Ryan's record as a deputy did not provide notice that any lack of training was leading her to use excessive force, initiate unreasonable searches, or unlawfully arrest citizens.  Absent evidence that department defendants were more than merely negligent in training and supervising Ryan, the case against them fails.

In her sur-reply to department defendants' reply brief, Steadman again points out what she perceives to be a material issue of fact precluding summary judgment: whether Ryan's actions were in

accordance with department training, policy and procedures. Steadman argues that there is a genuine issue of material fact on this point based on Ryan's continued insistence that her actions were both lawful and in conformance with departmental policy and procedure. Ignoring the substantial body of evidence contradicting this assertion, in other words, giving Steadman the benefit of the doubt that this dispute is genuine, it is not material. Supervisory liability requires more than a showing that Ryan has a woefully inadequate understanding of the bounds of her authority and of the department's policies and procedures. Rather, the evidence must show that department defendants were put on notice by a history of widespread abuse that Ryan did not know what she was doing. Ryan's deposition testimony, even viewed in the light most favorable to Steadman, simply cannot carry the load she is trying to place on it.

As department defendants further point out, Steadman has failed to present evidence sufficient to vitiate the protection afforded them by qualified immunity. Qualified immunity adds an additional layer of protection to the department defendants' conduct. *See Saucier,* 533 U.S. at 197 (holding that "qualified immunity requires an analysis not susceptible of fusion" with the underlying question of whether defendant violated constitutional right). Assuming *arguendo* that the evidence supports a claim that department defendants violated § 1983, only if they would have reasonably known that their conduct violated the law can they be liable to Steadman for money damages. Simply put, an alternative

14

reason that summary judgment is appropriate as to department defendants is that Steadman has not identified any authority that would come anywhere close to clearly establishing that Hale, Box, or Liddell would have reasonably understood his actions to be in violation of § 1983.[5]   Qualified immunity protects department defendants from individual liability, even assuming that their alleged acts and omissions could otherwise support liability under § 1983.

Steadman's qualified immunity argument misunderstands the nature of the analysis.   While she correctly states the legal standard, Steadman immediately transitions to a discussion of how it was clearly established that **Ryan** used excessive force, initiated an unreasonable search, and effected an unlawful arrest. Department defendants, moving for summary judgment separate from Ryan, make no effort to defend Ryan's conduct.   Steadman's analytical sleight of hand cannot be allowed to obscure the proper inquiry, namely, whether a reasonable sheriff, training officer, or supervisor would know, in light of existing law, that his training and supervision violated § 1983.   Summary judgment is due to be granted to Hale, Box, and Liddell as to any and all claims against them in their individual capacities based on qualified immunity.

---

[5] There is no genuine dispute (nor can there be) that department defendants were acting within their discretionary authority with regard to the training, supervision, and discipline of Ryan.  Thus, under the required qualified immunity analysis, it falls upon Steadman to demonstrate that the department defendants' actions violated clearly established law.  *See Vinyard*, 311 F.3d at 1346.

Qualified Immunity of Ryan

Like department defendants, Ryan raises qualified immunity as a defense to the § 1983 claims against her in her individual capacity.  Unlike department defendants, Ryan is not entitled to qualified immunity.  Assuming the factfinder agrees with Steadman's version of events, Ryan's conduct went "far beyond the hazy border" between acceptable and unacceptable searches, uses of force, and arrests.  *See Vinyard*, 311 F.3d at 1350, n. 18.; *Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000).  The facts according to Steadman place this case among those where the law speaks with such "obvious clarity" that a reasonable officer in Ryan's position could not have believed her conduct to be acceptable.  *Id.*  Ryan's arguments to the contrary depend upon her rendition of facts that departs from the requirement that the court view the evidence in the light most favorable to Steadman as the nonmovant.  Ryan claims, for example, that she thought Steadman was going to try to hit her when she pushed her against the car.  Ryan's argument requires an impermissible fact determination and ignores the presence of one or more genuine issues of material fact.  Ryan is not entitled to qualified immunity.

State Law Assault and Battery Claims Against Ryan

As to Steadman's possible state law assault and battery and false imprisonment claims, Ryan raises the defense of state-agent immunity as outlined by the Alabama Supreme Court in *Ex parte Cranman*, 792 So.2d 392, 405 (Ala. 2000).  Summary judgment is not

appropriate on this defense because one or more genuine issues of material fact exist regarding whether Ryan acted in such a way as to abrogate her immunity.

*Conclusion*

In accordance with the foregoing, the motion for summary judgment of Hale, Box, and Liddell will be granted.  The motion for summary judgment of Ryan will be granted in part and denied in part.  A separate order will be entered consistent with this opinion.

DONE this 16th day of June, 2005.

_____

WILLIAM M. ACKER, JR.

UNITED STATES DISTRICT JUDGE

17